498 So.2d 683 (1986)
The GENET COMPANY, John E. Genet and Max Genet, Jr., Appellants,
v.
ANNHEUSER-BUSCH, INC., Appellee.
No. 85-2853.
District Court of Appeal of Florida, Third District.
December 16, 1986.
Walton, Lantaff, Schroeder & Carson and George W. Chesrow and Douglas H. Stein, Miami, for appellants.
Howrey & Simon and Peter E. Moll, Washington, D.C., Neblett & Sauer and John N. Moore, III, Key West, for appellee.
Before BARKDULL, HENDRY and HUBBART, JJ.
HENDRY, Judge.
This is an appeal by the plaintiffs (Genets) from an adverse summary judgment denying their claim against Annheuser-Busch, Inc. (A-B) for tortious interference *684 with a business relationship. We affirm based upon the following analysis.
Plaintiffs Max Genet, Jr. and John E. Genet allegedly entered into a contract with Lopez Wholesale Liquors, Inc. (Lopez), an A-B wholesaler in Key West, Florida, to purchase its A-B wholesalership. Under the terms of the Annheuser-Busch Wholesaler Equity Agreement (Equity Agreement), the transfer of ownership of any A-B wholesalership was subject to the approval of A-B. Plaintiffs recognized this from the beginning, and their contract with Lopez was expressly conditioned upon A-B's approval of Lopez's transfer of its A-B wholesalership. Exercising its contractual right under the Equity Agreement, A-B disapproved Lopez's proposed transfer of its A-B wholesalership to the Genets. Lopez is not a party to this action and does not complain of or contest A-B's decision. The plaintiffs filed suit, claiming that A-B interfered with their contract with Lopez by disapproving the proposed transfer. Their complaint alleged that A-B approved the sale of the wholesalership pursuant to the terms of the Equity Agreement,[1] and then on the day of closing, wrongfully repudiated its approval of the sale. Plaintiffs alleged that once A-B approved the sale pursuant to these terms, thereafter, A-B was not authorized to interfere with the performance of the contract with Lopez.
Under Florida law, a cause of action for tortious interference does not exist against one who is himself a party to the business relationship allegedly interfered with. Ethyl Corp. v. Balter, 386 So.2d 1220 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). Because plaintiffs' agreement with Lopez was specifically conditioned upon A-B's approval, as a matter of law, A-B cannot be liable for tortious interference with their agreement. Buckner v. Lower Florida Keys Hospital District, 403 So.2d 1025 (Fla. 3d DCA 1981) (cause of action for wrongful interference with business relationship is recognized only when interference is by one who is not a party to that relationship), review denied, 412 So.2d 463 (Fla. 1982); United of Omaha Life Insurance Co. v. Nob Hill Associates, 450 So.2d 536 (Fla. 3d DCA) (lender could not be found liable for tortious interference since it was a party to the contract), review dismissed, 458 So.2d 273 (Fla. 1984). A-B had the contractual right, as specified in the Equity Agreement, to approve or disapprove any proposed transfer of Lopez's wholesalership. Thus, A-B was not a disinterested third party to plaintiffs' agreement. Moreover, what the Genets sought, through their agreement with Lopez, was to obtain an A-B wholesalership and enter into an Equity Agreement with A-B. Thus, A-B was the source of the business opportunity which plaintiffs sought. The tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with. A.R.E.E.A., Inc. v. Goldstein, 411 So.2d 310 (Fla. 3d DCA 1982).
Likewise, there can be no claim where the action complained of is undertaken to safeguard or promote one's financial or economic interest. Bruce v. American Development Corp., 408 So.2d 857 (Fla. 3d DCA 1982); Ethyl Corp. v. Balter, 386 So.2d at 1225. Here, A-B, acting in its own best interest, had the right not to approve the proposed transfer. Accordingly, its actions taken to safeguard its economic interests are non-actionable. Ethyl Corp. v. Balter, 386 So.2d at 1225.
Plaintiffs concede that under the Equity Agreement, A-B had the right to approve or disapprove Lopez's proposed transfer of the wholesalership. However, *685 they allege that summary judgment was improper because A-B allegedly failed to comply with the thirty day time frame in the Equity Agreement. As a matter of law, plaintiffs lacked standing to challenge A-B's compliance with the terms of the Equity Agreement. Backus v. Smith, 364 So.2d 786 (Fla. 1st DCA 1978) (plaintiffs, not being members of the condominium association, lacked standing to "collaterally attack" the association's failure to abide by procedural requirements of its declaration and by-laws). The agreement outlines the rights between A-B and their wholesalers. Thus, whether A-B timely disapproved the proposed transfer of the wholesalership to the plaintiffs is not a question which may be litigated by the Genets since they are not a party to the agreement. Moreover, the plaintiffs allege that A-B waived its disapproval privilege under the Equity Agreement. Under Florida law, an essential element of waiver is the intentional relinquishment of a known right or privilege. Starkenstein v. Merrill Lynch Pierce Fenner & Smith, Inc., 572 F. Supp. 189 (M.D.Fla. 1983); Fireman's Fund Insurance Co. v. Vogel, 195 So.2d 20 (Fla. 2d DCA 1967); Sentry Insurance Co. v. Brown, 424 So.2d 780 (Fla. 1st DCA 1982). Here, there was no evidence that A-B ever intended to waive its right under the agreement.
Finally, plaintiffs argue that they should have been allowed to present the question of malice to a jury. According to Southern Bell Telephone & Telegraph Co. v. Roper, 482 So.2d 538, 539 (Fla. 3d DCA 1986),
The only way malice can be proved in the absence of direct evidence is by proving a series of acts which, in their context or in the light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive.
There is no evidence in the record that A-B acted out of malice. Rather, the only evidence in the record establishes that A-B based its decision to disapprove the proposed transfer entirely on business considerations.
For all the foregoing reasons we affirm the trial court's finding that there was no genuine issue as to any material fact and that A-B was entitled to summary judgment in its favor as a matter of law.
Affirmed.
NOTES
[1] Plaintiffs alleged that A-B waived its right to approve or disapprove the transfer when it failed to take action within a thirty day time period pursuant to the following provision in the Equity Agreement:

4(e)... . Failure on the part of A-B to take action within any of the time frames established in Exhibit 6 shall automatically constitute approval of the proposed change in ownership.